# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### EASTERN DIVISION

| | |
|---|---|
| DILYS YI-CHIN CHANG, <br><br> Plaintiff, <br><br> vs. <br><br> WATERLOO INDUSTRIES and MIKE HALL, <br><br> Defendants. | No. C05-2004 <br><br> **ORDER** |

_____

This matter comes before the court pursuant to defendant's June 2, 2006 motion for summary judgment (docket number 12). The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

The plaintiff, Dilys Yi-Chin Chang ("Chang"), claims that the defendants (her former employer), Waterloo Industries ("WI") and Mike Hall ("Hall") (her former supervisor), discriminated against and harassed her on the basis of her race, national origin, and gender in violation of Title VII of the Civil Rights Act of 1964, Iowa Code Chapter 216, and 42 U.S.C. § 1981. Chang also claims that she was retaliated against because she filed an administrative complaint with the Iowa Civil Rights Commission and the EEOC. Defendants move for summary judgment on all of Chang's claims. As set forth below, defendants' motion for summary judgment is granted.

## SUMMARY JUDGMENT

A motion for summary judgment may be granted only if, after examining all of the evidence in the light most favorable to the nonmoving party, the court finds that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. Kegel v. Runnels, 793 F.2d 924, 926 (8th Cir. 1986). Once the movant has properly supported its motion, the nonmovant "may not rest upon the mere allegations

1

or denials of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "To preclude the entry of summary judgment, the nonmovant must show that, on an element essential to [its] case and on which it will bear the burden of proof at trial, there are genuine issues of material fact." Noll v. Petrovsky, 828 F.2d 461, 462 (8th Cir. 1987) (citing Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Although "direct proof is not required to create a jury question, . . . to avoid summary judgment, 'the facts and circumstances relied upon must attain the dignity of substantial evidence and must not be such as merely to create a suspicion.'" Metge v. Baehler, 762 F.2d 621, 625 (8th Cir. 1985) (quoting Impro Prod., Inc. v. Herrick, 715 F.2d 1267, 1272 (8th Cir. 1983)).

The nonmoving party is entitled to all reasonable inferences that can be drawn from the evidence without resort to speculation. Sprenger v. Fed. Home Loan Bank of Des Moines, 253 F.3d 1106, 1110 (8th Cir. 2001). The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. Id. Although it has been stated that summary judgment should seldom be granted in employment discrimination cases, summary judgment is proper when a plaintiff fails to establish a factual dispute on an essential element of her case. Helfter v. UPS, Inc., 115 F.3d 613, 615-16 (8th Cir. 1997). The standard for the plaintiff to survive summary judgment requires only that the plaintiff adduce enough admissible evidence to raise genuine doubt as to the legitimacy of the defendant's motive, even if that evidence did not directly contradict or disprove defendant's articulated reasons for its actions. O'Bryan v. KTIV Television, 64 F.3d 1188, 1192 (8th Cir. 1995). To avoid summary judgment, the plaintiff's evidence must show that the stated reasons were not the real reasons for the plaintiff's discharge and that sex or other prohibited discrimination was the real reason for the plaintiff's discharge. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 153 (2000) (quoting the district court's jury instructions).

# STATEMENT OF MATERIAL FACTS[1]

Chang was born in Taiwan on April 28, 1968 and moved to the United States in late 1983. She is a naturalized U.S. citizen. Chang received a Bachelor of Science degree in chemical engineering from the University of California, Santa Barbara, in 1990 and a Masters of Science degree in manufacturing engineering from the University of Texas, El Paso, in 1995.

WI is an Iowa corporation with its international headquarters in Waterloo, Iowa. Chang came to work for WI as an International Buyer on May 8, 2000. Defendant Hall, a white male, was hired by WI as Director, Strategic Procurement on September 10, 2003. Hall became Chang's supervisor upon his hire and remained so until her termination. Prior to Hall's hire, Chang was supervised by Dan Shoemaker ("Shoemaker"), also a white male.

On July 2, 2003, Shoemaker sent an interoffice memo to Chang titled "Performance Issues of Concern." The three bullet points addressed in this memo were Chang's lack of cost reduction projects completed for 2003, poor communication with members of the purchasing team, and lack of willingness to carry out job duties requested by her supervisor. Shoemaker sent Chang a similar memo on July 18, 2003. Chang did not view these memos as performance improvement plans.

On October 5, 2005, Hall completed an employment requisition form for a Commodity Manager position, requesting that the position be filled by December 1, 2003. On November 3, 2003, Chang e-mailed Wallace Chow, who worked for a supplier of WI in Hong Kong, asking him "[a]re you interested in working in Iowa? We may have opening for Int'l Commo. Mgr. later." Chang testified that she did not apply for the Commodity Manager position because WI never internally posted the opening, so she was not aware that the job was open. On February 15, 2004, WI hired Forrest Walker, an

---

[1] Where disputed, the facts are set forth in the light most favorable to Chang as the nonmoving party.

African-American male, as Commodity Manager. Walker has a Bachelor of Science degree in public affairs from Indiana University, progress toward a Master of Science degree in public policy management from the University of Pittsburgh, and extensive experience in international business dating from 1988. Walker cannot speak or write Chinese, which was a stated requirement of the position. Chang is fluent in Chinese.

On February 17, 2004, Hall issued an interoffice memo to Chang titled "Performance Improvement Plan - Formal Written Warning." Generally speaking, the performance improvement plan alleged that Chang needed to improve in the areas of inventory management, project management, negotiating, attendance, and implementation. Chang was instructed that she was to meet with Hall every business day at 8:00 a.m. to discuss her progress and clarify any questions.

In March 2004, the WI International Headquarters Newsletter contained an article written by Mike Hall titled "Why China?" Chang found the following statements in the article offensive: "Chinese cultural norms make it very uncomfortable for a Chinese manager to verbalize negative feelings or admit problems. Production issues and delays occur that are not admitted by the factory." She also was offended by the statements "Vital to success in China is a clear understanding that the American way will not work and that western logic does not apply. Doing business in China is radically different than most Americans would expect." Hall did not consult with Chang prior to writing the article, but instead offered her the opportunity to write her own article about dealing with Chinese suppliers.

On March 19, 2004, Hall issued an interoffice memo to Chang titled "Performance Improvement Plan - Final Written Warning," which addressed the 30-day follow-up meeting held on March 17, 2004. Hall noted that "[w]hile improvements have been observed, [Chang's] demonstrated performance remain[ed] unacceptable" in the areas of inventory management, project management, negotiating, attendance, and implementation.

4

On April 12, 2004, Chang filed an administrative complaint with the Iowa Civil Rights Commission, which was cross-filed with the EEOC. In her administrative complaint, Chang alleged that WI had discriminated against her on the basis of her race, national origin, and sex, and identified Hall as the person at the company who had discriminated against her. Chang did not allege harassment in her administrative complaint, although she did state that March 18, 2004 was the last date that something discriminatory happened to her, i.e., her "job was threatened." The particulars of Chang's complaint state: "I am a Chinese female. I am treated differently than non-Chinese employees and male employees. On March 18, 2004, my employer threatened my job. I believe that this happened and that I am treated differently because of my race, national origin, and sex."

On April 16, 2004, Hall issued an interoffice memo to Chang titled "Performance Improvement Plan - Final Written Warning Continuance," which addressed the 30-day follow-up meeting held on April 15, 2004.

WI received Chang's administrative complaint by certified mail on April 23, 2004. On April 23, 2004, Chang refused to carry out direct orders from Forrest Walker, who was acting department manager during Mike Hall's absence, and then on April 30, 2004, from Mike Hall himself, to send samples of one supplier's patented part to another supplier because she objected to the order on ethical grounds. Chang claims that she was concerned about the legality of sending samples out without agreement and authorization from the patent holder. Chang and Hall exchanged e-mails about Chang's refusal. On April 30, 2004, Hall advised Chang, via e-mail, that "[i]f the instruction is unethical and is in conflict with the company's core values, it is your responsibility to raise this issue to upper management for resolution." Chang e-mailed the President and COO of WI on May 10, 2004, and advised him of her concerns regarding the patented slides. In WI's response to Chang's administrative complaint, WI stated that Chang was terminated for insubordination, i.e, refusing to send out the slides after repeated orders to do so, and

5

going outside the normal chain of command by sending the President and COO of WI, and several other associates, the e-mail regarding the patented slides, without ever sitting down to talk directly to her supervisor.

WI terminated Chang's employment on May 11, 2004. On May 12, 2004, Chang amended her administrative complaint to include a retaliation claim, i.e. "Today my employer terminated my employment. I believe it is in retaliation for my complaining internally of discrimination and because I filed my Charge of Discrimination with the Commission." Chang was offered a severance package at the time of her termination, a condition of which included a non-competition clause. Chang declined the severance package.

In her discovery responses, Chang identified the following instances of "unequal treatment" and "negative and offensive stereotypes":

1. Mike Hall wrote an article in company's newsletter that strongly stereotyped Chinese and Chinese culture.
2. I was the only one in Purchasing Department to be blamed for air freight and price increased while other buyers who also had to air ship their responsible components due to Waterloo Industries, Inc. customer's sudden demand and accept price increases from their suppliers due to work wide market trend were not under Performance Improvement Plan.
3. Mike Hall hardly discussed work related issues with me in person but he did constantly go to other buyer's cubicles to discuss issues in person.
4. Mike Hall said he has hard time understanding my English in our "first" and the only "one to one" meeting before "Formal Written Warning" in November 2003."

When asked to identify each act of "harassment" based on gender or race, Chang answered that "Waterloo Industries Inc. hired Forrest Walker instead of promoting me as

6

the International Commodity Manager because I am female in February 2004." Chang also identified this as a way by which she was discriminated against on the basis of her gender. Chang further responded that Walker was less qualified than her for the position of International Commodity Manager because he cannot speak or write Chinese, which is the language skill WI required for the position, and because he did not possess a higher academic degree than she did. Chang testified that Hall harassed her based upon her gender by giving her a task that required her to work on a Saturday and Sunday, and with his requirement that she attend meetings with him alone at 8:00 every morning with his door shut. Chang concedes that Hall never inappropriately touched her, never used inappropriate language of a sexual nature around her, and never told her a sexually suggestive joke.

When questioned regarding her retaliation claim, Chang restated her concerns about being asked to send patented slides to a competing supplier, and that "I filed complaints with the Iowa Civil Right [sic] Commission and was terminated."

In answer to an interrogatory asking her to describe each act of harassment or other discrimination against her by Hall, Chang answered:

> 1. He wrote an article for the company's newsletter stereotyping persons of Chinese descent.
> 2. He disparaged my ethnicity at the company's chili eating contest.[2]
> 3. He said that he had a hard time understanding my English in November 2003.
> 4. He intentionally would not speak to me, and would purposely avoid me rather than have contact with me, despite having regular contact with other Waterloo Industries buyers in my same position who looked [like] him and came from the same type of background.

---

[2] During the company chili eating contest, Hall told Chang that "he was very surprised to see [her] eating chili" and then told her "oh, you eat chili."

7

> 5. He put me on a Performance Plan that no other buyer was placed on despite being in a similar situation for air freight and price increases.

At her deposition, Chang testified that she was discriminated against on the basis of her gender also in that Hall told her that she was "argumentative" when she did not say what he wanted to hear during their meetings after his first warning to her and that he told her that she said "no" a lot. Hall also told Chang in a meeting that people in the company did not trust her.

## CONCLUSIONS OF LAW

### Harassment and Discriminatory Failure to Promote

Defendants argue that they are entitled to summary judgment on Chang's claims for harassment/hostile environment and discriminatory failure to promote under Title VII and the ICRA because plaintiff failed to exhaust her administrative remedies with respect to these claims. Defendants contend that plaintiff's harassment and failure to promote claims were not included in her administrative complaint, and neither grow out of nor are reasonably related to the allegations of her administrative charge.

Chang claims that a claim of harassment would naturally be investigated in the course of investigating her allegation that the last discriminatory action taken by WI was that her "job was threatened." Chang further argues that her failure to promote claim is reasonably related to her claims that she was treated differently because she was a Chinese female. Also, in her response to the ICRA questionnaire, Chang stated that she was "denied promotion opportunities" because of her gender, race, and national origin, and that a "non-Chinese male of U.S. national of U.S. national origin was placed into a position that I was qualified for."

"A Title VII plaintiff must exhaust administrative remedies before bringing suit in federal court." Cottrill v. MFA, Inc., 443 F.3d 629, 634 (8th Cir. 2006). This means that a claimant must first timely file an administrative notice and the charge must be

8

"sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12b). The administrative charge then limits the scope of any subsequent civil action in that a plaintiff may seek relief for any other acts that "grow[] out of or [are] like or reasonably related to the substance of the allegations in the administrative charge." Cottrill, 443 F.3d at 634 (quoting Nichols v. Am. Nat'l Ins. Co., 154 F.3d 875, 887 (8th Cir. 1998). "Permitting claims to be brought in court which are outside the scope of the EEOC charge would circumscribe the EEOC's investigatory and conciliatory role and deprive the charged party of notice of the charge." Id. (citations omitted). See also Parisi v. The Boeing Co., 400 F.3d 583, 585 (8th Cir. 2005) ("The claims of employment discrimination in the complaint may be as broad as the scope of the EEOC investigation which reasonably could be expected ro result from the administrative charge."). And while courts "should not use Title VII's administrative procedures as a trap for unwary pro se civil-rights plaintiffs . . . there is a difference between liberally reading a claim which 'lacks specificity' and inventing, *ex nihilo*, a claim which simply was not made." Shannon v. Ford Motor Co., 72 F.3d 678, 685 (8th Cir. 1996). Iowa law applies the same standard. Boge v. Ringland-Johnson-Crowley Co., 976 F.2d 448, 451 (8th Cir. 1992) (citing Hulme v. Barrett, 449 N.W.2d 629, 633 (Iowa 1989)).

Chang did not claim harassment in her administrative charge. She did not identify Hall as the person allegedly harassing her. With respect to her discrimination charge, she did claim that her "job was threatened" on March 18, 2004, which was the time of a follow-up meeting with Hall regarding her performance improvement plan, and that she was "treated differently than non-Chinese employees and male employees." Chang is now claiming, however, that she was harassed due to her race, gender, and national origin by WI's hiring of Forrest Walker for the International Commodity Manager position, by Hall's article about Chinese business practices, by Hall's comment about her participation in the company chili eating contest, by Hall's November 2003 comment that he had a hard time understanding her English, by Hall's intentionally avoiding contact with her, and by

9

Hall's actions in putting her on a performance improvement plan. Chang further purports to have been harassed by Hall's requirement that she work on a Saturday or Sunday to complete an assigned task, and by Hall's requirement that she have a closed door meeting with him alone every morning.

The court finds that Chang has failed to exhaust her administrative remedies with respect to her Title VII and ICRA harassment claim. Chang's specific claims of gender-based harassment do not grow out of and are not reasonably related to her general allegations in the discrimination context that her "job was threatened" and that she was "treated differently" than other employees. Chang's administrative complaint did not put WI or Hall on notice that she was claiming gender-based harassment. The court therefore grants defendants' motion for summary judgment on Chang's Title VII and ICRA harassment claims.[3]

---

[3] Even were the court to consider Chang's harassment claim on its merits, it falls short of surviving summary judgment. Considering the totality of the circumstances and comparing this case to the facts in other cases in which the Eighth Circuit Court of Appeals has rejected harassment claims, Chang has not established a question of material fact as to whether the alleged harassment was sufficiently severe or pervasive as to affect a term, condition, or privilege of employment. Cottrill, 443 F.3d at 636. See LeGrand v. Area Red. for Cmty & Human Servs., 394 F.3d 1098, 1100-03 (8th Cir. 2005) (finding no objectively hostile work environment created by defendant's unwelcome sexual advances on three separate occasions over a nine-month period, including asking the employee to watch pornographic movies with him, hugging and kissing, and grabbing the employee's buttocks and thigh); Tuggle v. Mangan, 348 F.3d 714, 722 (8th Cir. 2003) (holding no actionable hostile work environment based on defendant's inappropriate sexual comments, taking a photograph of plaintiff's rear end and giving plaintiff undesirable work assignments); and Duncan v. Gen. Motors Corp., 300 F.3d 928, 933 (8th Cir. 2002) (holding no actionable hostile work environment where co-employee asked plaintiff if she would have a relationship with him, touched the plaintiff's hand on four to five occasions, requested that the plaintiff sketch a sexually objectionable planter, asked plaintiff to complete a task on his computer where its screen saver depicted a naked woman, hung an offensive poster, and asked plaintiff to type a document for him containing sexually offensive items). The alleged harassment endured by Chang was relatively infrequent, involved no physically threatening or humiliating conduct, but rather were offensive
(continued...)

Chang has, however, exhausted her discriminatory failure to promote claim. In her narrative in support of her administrative charge, Chang stated that she was "denied promotion opportunities because of [her] sex, race and national origin" and that a "non-Chinese male of U.S. national origin was placed into a position that I was qualified for." The court will consider the merits of Chang's discriminatory failure to promote claim.

Applicable Analytical Framework

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual, with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII also prohibits an employer from discriminating against an employee "because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3.

Discrimination and retaliation claims are analyzed either under the Price Waterhouse direct evidence framework or the McDonnell Douglas indirect evidence or burden-shifting framework. Defendants argue that the McDonnell Douglas analysis is appropriate as there is no direct evidence of either discrimination or retaliation. Defendants characterize the statements in the "Why China?" article Hall wrote for the company newsletter as stray remarks unrelated to the decisional process. Chang contends that Hall's derogatory statements about China and Chinese business practices constitute

---

³(…continued)
utterances, and Chang has provided no evidence that the alleged harassment unreasonably interfered with her work performance. Therefore, the court also grants defendants' motion for summary judgment on Chang's § 1981 harassment claim. See Eliserio v. United Steelworkers of America Local 310, 398 F.3d 1071, 1077 (8th Cir. 2005) ("Title VII and § 1981 claims alleging a hostile work environment are analyzed under an identical standard.").

11

direct evidence of both discrimination and retaliation, making the Price Waterhouse framework applicable.

"Stray remarks" are "statements by nondecisionmakers," or "statements by decisionmakers unrelated to the decisional process itself." Price Waterhouse v. Hopkins, 490 U.S. 228, 276-77 (O'Connor, J., concurring). The Eighth Circuit Court of Appeals has defined direct evidence as "conduct or statements by persons involved in the decisionmaking process that may be viewed as directly reflecting the alleged discriminatory attitude . . . sufficient to permit the factfinder to find that that attitude was more likely than not a motivating factor in the employer's decision." Browning v. President Riverboat Casino-Missouri, Inc., 139 F.3d 631, 634-35 (8th Cir. 1998) (quotations omitted). Comments demonstrating a discriminatory animus in the decisional process, or those uttered by individuals closely involved in the decisionmaking process may constitute direct evidence as defined by Price Waterhouse. Beshears v. Communications Servs., Inc., 930 F.2d 1348, 1354 (8th Cir. 1991).

Hall's "Why China?" article appeared in the March 2004 company newsletter. Chang was terminated two months later, on May 11, 2004. Chang has presented no evidence that the article was related to, or even mentioned in connection with her termination. The statements in the article are stray remarks as they were unrelated to the decisional process. Likewise, Chang has presented no direct evidence in support of her retaliation claims. As such, the plaintiff's discrimination and retaliation claims will be analyzed under the McDonnell Douglas burden-shifting analysis.

## Application of McDonnell Douglas

There are three steps under the McDonnell Douglas indirect evidence framework: (1) prima facie case; (2) nondiscriminatory reason by the employer; and (3) pretext. Texas Dept. of Comm. Affairs v. Burdine, 450 U.S. 248, 252, 53 (1981) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973)). The plaintiff bears the initial burden of establishing a prima facie case of discrimination. St. Mary's Honor Ctr. v.

Hicks, 509 U.S. 502, 506 (1993). In order to do this, the plaintiff must demonstrate: (1) that she is a member of a protected class; (2) that she was qualified to perform her job; (3) that she suffered an adverse employment action; and (4) that nonmembers of her class . . . were not treated the same. Breeding v. Arthur J. Gallagher & Co., 164 F.3d 1151, 1156 (8th Cir. 1999).

Once the plaintiff establishes her prima facie case of employment discrimination, the burden then "shifts to the employer to demonstrate a legitimate nondiscriminatory reason for the adverse employment action." Id. "The employer need only articulate, not prove, its legitimate reason, because the employee continues to bear the burden of proving that he or she was subjected to unlawful discrimination." Bauer v. Metz Baking Co., 59 F. Supp.2d 896, 908 (N.D. Iowa 1999) (citing Walton v. McDonnell Douglas Corp., 167 F.3d 423, 427 (8th Cir. 1999)). "This burden is one of production, not persuasion; it 'can involve no credibility assessment.'" Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 141 (2000) (quoting St. Mary's Honor Ctr., 509 U.S. at 509). To overcome the employer's proffered legitimate reason, the employee "'must present affirmative evidence'" that discrimination was the real reason for the adverse employment action. Bauer, 59 F. Supp.2d at 909 (quoting Walton, 167 F.3d at 428).

Applying this framework to this case, the court must determine whether Chang has established her prima facie case of discrimination, be it gender, race or national origin. First, it is undisputed that Chang is a member of these protected classes. Whether Chang was qualified to do her job is a much closer question. Her performance issues were addressed by her former supervisor, Dan Shoemaker, in July 2003. Chang takes no issue with Shoemaker's write-ups. Hall first addressed her alleged performance deficiencies in a comprehensive, written memorandum dated February 17, 2004. Chang's only defense to Hall's complaints is to allege, without providing any evidence in support of her allegations, that her peers also used air freight, and that sometimes her use of air freight was approved and appropriate. Hall's memorandum addressed several other performance

13

deficiencies besides air freight, none of which Chang disputes. Therefore, the court finds that Chang was not qualified to do her job. This finding is not determinative, however, because the court's subsequent analysis demonstrates that even if Chang was qualified for her position, she cannot demonstrate that WI's purported legitimate, non-discriminatory reasons for her termination were pretextual. Third, the plaintiff must show that she suffered an adverse employment action. "[A]n adverse employment action is exhibited by a material employment disadvantage, such as a change in salary, benefits, or responsibilities." LaCroix v. Sears, Roebuck & Co., 240 F.3d 688, 691 (8th Cir. 2001); see also Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999) (holding that adverse employment action includes demotions and reductions in pay). Chang's termination clearly constitutes an adverse employment action.

Finally, the plaintiff must show that similarly situated individuals were not treated the same way as she was. "The test for whether employees are 'similarly situated' to warrant a comparison to a plaintiff is a 'rigorous' one." Palesch v. Mo. Comm'n on Human Rights, 233 F.3d 560, 568 (8th Cir. 2000) (internal citations omitted). "[T]he individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." Clark v. Runyon, 218 F.3d 915, 918 (8th Cir. 2000) (citing Lynn v. Deaconess Med. Ctr.-W. Campus, 160 F.3d 484, 487-88 (8th Cir. 1998)). In this regard, plaintiffs must present more evidence than their subjective beliefs that their peers had similar performance deficiencies, i.e., "unsubstantiated allegations are insufficient to withstand summary judgment." Clearwater v. Independent Sch. Dist. No. 166, 231 F.3d 1122, 1127 (8th Cir. 2000).

Because Chang has not established her prima facie case, summary judgment is proper. However, even giving Chang the benefit of assuming that she was able to establish a prima facie case, the burden shifts to the defendants to demonstrate a legitimate, non-discriminatory reason for its adverse employment actions. Defendants have done so

by claiming that Chang's termination was not based on her gender, race, or national origin, but rather was the result of her failure to follow a directive to send slides to a supplier. She had been on performance improvement plans for some time and cannot demonstrate that they were pretextual. Regarding Chang's failure to promote claim, defendants claim that Walker was a more qualified candidate, noting that Chang was already having documented performance issues at the time of the job opening. Defendants further note that Chang did not apply for the position. The court finds that the defendants have met their burden.

Upon the defendant's showing of a legitimate, nondiscriminatory reason, the burden returns to the plaintiff to show that the reasons given by the defendants were not the true reasons behind her adverse employment actions, but were merely a pretext for discrimination. To demonstrate pretext, Chang points to the fact that WI's stated reason to the Iowa Civil Rights Commission for her termination was insubordination for going outside the chain of command and e-mailing the President and COO of WI regarding the belief that sending the patented slides of one supplier to another was unethical and potentially illegal, when that was what she was told to do by Hall. Chang further points to Hall's failure to mention some of her accomplishments and performance improvements in her performance improvement plan as evidence of pretext, as well as Hall's giving her new job responsibilities as part of her performance improvement plan, e.g., finding new suppliers and negotiate and establish purchase contracts. Chang also argues that Hall's criticism about her being late to meetings is inconsistent with Hall's acknowledgment that she was sometimes scheduled for different meetings at the same time.

Chang's evidence of alleged pretext does not show that WI terminated her employment because she is a female of Chinese ancestry. Chang admits that she refused to follow a repeated directive from a supervisor. Certainly, the fact that Chang was terminated the day after she e-mailed WI's President expressing her concerns regarding the legality of sending out the patented slides raises an inference that she was terminated

for going over Hall's head, but it does not create an inference that she was terminated because she is a female of Chinese ancestry. She does not dispute many of the items on her performance improvement plan, but instead attempts to argue that some of the items constituted new and additional job responsibilities. Chang presents no evidence in support of this argument, nor any evidence that defendants' expectations of her were in dealing with suppliers was different than that of her peers. Defendants are entitled to summary judgment on Chang's discriminatory termination claims.

Regarding her failure to promote claim, Chang contends that she was more qualified than Walker for the International Commodities Manager position because she was fluent in Chinese, which was a stated job requirement, and because she held a higher academic degree than Walker. Walker was hired by WI on February 16, 2004, the day before Chang was put on a performance improvement plan which noted several performance deficiencies, the majority of which Chang does not dispute. Chang had previously been written up by her former supervisor for performance issues. Based on this record, Chang has not demonstrated that Walker was less qualified than her for the International Commodity Manager position. Kincaid v. City of Omaha, 378 F.3d 799, 805 (8th Cir. 2004). Summary judgment is proper on Chang's discriminatory failure to promote claim.

### Retaliation

Chang claims that Hall's "Why China?" article constitutes direct evidence of retaliation. Defendants argue that the article is a "stray remark," unrelated to the decisions made affecting the Chang's employment, making the McDonnell Douglas analysis applicable. Under McDonnell Douglas, a plaintiff must first establish a prima facie case of retaliation by "show[ing] that she was subjected to an adverse employment action that was causally related to his or her protected activity." Duncan, 371 F.3d at 1026. If the prima facie case is met, the burden then shifts to the defendants to produce a "legitimate, non-retaliatory reason for the action it took against the plaintiff." Logan v. Liberty Healthcare Corp., 416 F.3d 877, 881 (8th Cir. 2005) (quoting EEOC v. Kohler Co.,

335 F.3d 766, 772 (8th Cir. 2003)).  If the defendants satisfy their burden, the plaintiff is "then obligated to present evidence that (1) created a question of fact as to whether [defendant's] reason was pretextual and (2) creates a reasonable inference that [defendants] acted in retaliation." Id. (quoting Smith v. Allen Health Sys., Inc., 302 F.3d 827, 832 (8th Cir. 2002)).

It is undisputed that Chang filed a charge of discrimination with the Iowa Civil Rights Commission April 12, 2004.  By this time, she had already been written up by Hall twice for her performance issues.  She was written up again on April 16, 2004, but that was a week before defendants received notice of Chang's administrative complaint.  Chang then refused to follow a directive from her supervisors to send out slides to a competing supplier.  She was terminated on May 11, 2004.  Aside from the temporal proximity, Chang has presented no evidence that her administrative discrimination complaint played any role whatsoever in WI's decision to terminate her employment.  See Griffith v. City of Des Moines, 387 F.3d 733, 738 (8th Cir. 2004) (noting the long-established rule that more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation). Defendants' motion for summary judgment on Chang's retaliation claims is granted.

Upon the foregoing,

IT IS ORDERED that the defendant's motion for summary judgment (docket number 31) is granted.  The clerk shall enter judgment in favor of defendants and dismiss this case with prejudice.

August 23, 2006.

_____
JOHN A. JARVEY
Magistrate Judge
UNITED STATES DISTRICT COURT

17